THE STATE v. BOWMAN, Appellant.

Division Two, February 12, 1901.*

1. **Criminal Law:** PRACTICE: VERDICT. The weight of the evidence is for the jury, and where the evidence, if believed by the jury, is sufficient to sustain the verdict, the Supreme Court will not interfere.

2. ———: ———: CONTINUANCE. No error was committed by the trial court in refusing a continuance on account of the illness of a witness whom the defendant knew to be too ill to attend court, and whose deposition could have been taken if desired.

3. ———: NEWLY DISCOVERED EVIDENCE: AFFIDAVIT. A motion for a new trial on the ground of newly-discovered evidence, should be supported by the affidavit of the supposed witness, and must, in other respects, meet the requirements of the law; otherwise, it should be overruled.

*NOTE.—This case was not transmitted to the reporter by the clerk until May 31, 1901, and hence not received in time to be placed in its chronological order.

State v. Bowman.

Appeal from Atchison Circuit Court.—*Hon. Gallatin Craig,* Judge.

AFFIRMED.

*L. D. Ramsay* for appellant.

(1)   Under the evidence, the defendant is not guilty of rape.   He may be guilty of violating section 1838; if so, the case may be remanded.   State v. Lacey, 111 Mo. 513-517; 2 Bishop's Crim. Law, sec. 1132; 1 Whart's Crim. Law, sec. 554; State v. Dalton, 106 Mo. 469.   (2)   Where it appears that the verdict is unsupported by the evidence, or that injustice has been done, it is the duty of the trial court to interfere and award a new trial.   Bank v. Armstrong, 92 Mo. 265. Where a new trial is asked on the ground that the verdict is contrary to the evidence, the trial court is bound to pass on the question and grant a new trial, if the verdict is in fact contrary to the evidence.   State v. Young, 119 Mo. 495.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State.

(1)   The evidence is sufficient to sustain the charge contained in the indictment.   The prosecutrix was only sixteen years of age, with scarcely any education, and unacquainted with the ways and wickedness of the world.   Though living within a short distance of Tarkio, she was unacquainted with the roads leading thereto.   All these facts should be taken into consideration in passing upon the strength of the testimony. State v. Marcks, 140 Mo. 656; Higgins v. People, 58 N. Y. 379; State v. Edie, 147 Mo. 535.   To weigh the evidence is the prerogative of the jury, and not of the court.   State v. Marcks, 140 Mo. 666.   (2)   Defendant filed an application

for a continuance on the ground that Miss Beada Ray, a sister to the prosecutrix, was sick and unable to attend court. The application for a continuance was properly overruled by the court. It is not in due form, and shows that due diligence had not been used in securing her attendance. It is not shown that she had been subpoenaed; in fact it appeared from the affidavit itself that no subpoena had been ordered for her. Besides, the subject-matter of the affidavit is nothing more than hearsay. Defendant himself does not and can not say that the witness would testify as there indicated. (3) A new trial should not have been granted on the ground of newly-discovered evidence. Due diligence is not shown to have been used; the evidence would be merely cumulative, and result in nothing more than "character testimony." Courts do not favor new trials on the ground of newly-discovered evidence. State v. Bybee, 149 Mo. 632; State v. Miller, 144 Mo. 26; State v. Nettles, 153 Mo. 464. Newly-discovered evidence, which is merely for impeachment, is not ground for a new trial. State v. Lucas, 147 Mo. 70.

GANTT, J.—The defendant was indicted at the May term, 1900, of the Atchison Circuit Court, for rape. He was duly arraigned and his trial had at the September term, 1900. He was convicted and sentenced to the penitentiary. He appeals.

The evidence, with little contradiction, established these facts: Philura Ray, a young woman, sixteen years old, lived at Fairfax, in Atchison county, in this State, with her parents, L. D. Ray and Mrs. Sarah E. Ray. Mrs. Ray had two half sisters, Mrs. Florence Bell and Mrs. Nancy Buster, who lived at Tarkio, about eight miles distant from Fairfax. The defendant James Bowman was and is a cousin of Mrs. Ray and her said sisters. Although thus closely related, defendant was

not personally known to these ladies prior to December, 1899, some three or four months before the commission of the crime of which he was convicted. In December, 1899, defendant, with his mother, visited his aunt Mrs. Ray and her family, and remained one day. He saw them no more until April 1, 1900, when he again came to visit them. On the third day of April, 1900, after a disagreement with a Mr. Collins for whom he was working, he came to Ray's house, and said he desired to leave some clothing there until he could settle with Collins. He then made arrangements to work on a drainage ditch with Ray, and was to go to Skidmore, about twenty miles distant, for a team. He remained at Ray's until afternoon, when he invited Mrs. Ray to go with him in a buggy to visit her sisters, and his cousins, Mrs. Bell and Mrs Buster. Mrs. Ray assisted in the support of her husband's family by washing by the day, and she excused herself on the ground that she had a washing on hand that day, and couldn't go with him. He then asked her, "Why can't the girl go?" She said, "No, one of the girls couldn't go unless they both went." Mrs. Ray had two daughters, Philura and Beada; the latter was then about twenty years old. He offered then to take both, and their mother consented. He left Fairfax with the two girls about 2:30 on the afternoon of April 3, and reached Tarkio about 4 p. m. of that day. After reaching Tarkio they drove first to Mrs. Buster's, but found no one at home. They then went to Mrs. Bell's. They made a short visit there, and then defendant and the prosecutrix drove over to Mrs. Graham's for whom Mrs. Bell's daughter was working, and brought her home, and they spent the time until about five o'clock, and took Miss Bell back to Graham's. The defendant and the two Ray girls then drove to Mrs. Buster's. After a short visit there they drove back to Mrs. Bell's, and as it was getting late, the girls concluded to remain over night, one with their aunt Mrs. Buster, the

other, Philura, with Mrs. Bell. Philura was left at Mrs. Bell's and defendant took Beada to Mrs. Buster's.

Later, and after supper that evening, defendant drove to Mrs. Bell's, and called to the prosecutrix, and said her sister had concluded to go home and they were going. Thereupon Philura, the prosecutrix, got in the buggy with defendant to go home. He did not take her back to her sister, but drove out of town another way. She remonstrated with him and told him he had lied to her, but he drove rapidly until he reached a point some three miles out of Tarkio, when he began to take various liberties with her person, against which she resisted and protested, and threatened him with her father, but he persisted, and according to her evidence he stopped the buggy and forcibly had carnal connection with her in the buggy. He then drove a while and stopped again, and again outraged her. She resisted, and "holloed" each time to her utmost.

He dallied along the road and again had connection with her by force before they reached her home about 11 o'clock that night.

It may as well be stated here that defendant testified that he had connection with the prosecutrix three times that night before they reached her home, but says it was with her consent. Upon reaching Fairfax, he did not take her to her father's house, but dropped her on the streets two blocks distant. About 11 o'clock she reached her father's house, and her cries attracted her mother's attention to her. She heard her crying, "I'll tell Pa on you when I get home." Her dress and skirts were badly torn, and her underclothing torn into strips.

When asked why she left her sister, she said to her mother, defendant forced her to do so. Her clothing was exhibited to the jury. Her father was not at home when she came that night. He had become alarmed about his daugh-

ters, and had gone to Tarkio to find them, but missed them, and reached home about four o'clock next morning.

That night, after defendant's return to Fairfax, he hired a team from a livery stable to go to Skidmore. He told the driver he was going to Skidmore, and to Kansas City the next morning. He said he was going to leave because he was in trouble. He said *he had done a little business with Mr. Ray's girls.* "He said it beat this here sporting on the wagon, beat it all to pieces."

About a week before the trial of the case, in September, the mother of defendant and his brother went to the home of the prosecutrix and attempted to compromise the matter. They offered her $50, and finally she said if they would pay her $100, right then and there, she would settle with them. As a matter of fact they didn't settle it.

I. The indictment is drawn under section 1837, Revised Statutes 1899, and is in all respects sufficient.

The instructions of the court are not challenged by counsel for defendant in this court. They were, however, entirely unobjectionable and very favorable to defendant.

The main point relied upon by defendant is that the defendant is guilty under section 1838, Revised Statutes 1899, but not of rape.

The weight of the evidence was for the jury, and there was sufficient evidence to sustain the verdict if they believed the evidence of the State's witnesses. The testimony of the defendant corroborates the prosecutrix in every material matter, except that he denies that he accomplished his purpose by force and against her resistance. Her immediate disclosure to her mother upon reaching home the night of the outrage, the torn and bedraggled condition of her clothing, and all the circumstances strongly supported her evidence. The unblushing flippancy with which the defendant detailed the infamous

wrong he had committed against this young girl, his own kins-woman, could only have produced in the minds of the jury an utter unbelief in his truthfulness. His story is incredible, and we do not see how the jury could have arrived at a differ-ent verdict.

There was not the slightest evidence impugning the previous chaste character of the prosecutrix. 'Relying upon the relationship of defendant, she had consented to accompany him to visit her relatives in Tarkio. The extreme youth of the prosecutrix rendered her incapable of resisting successfully the brutal assault of the defendant.

The trial court heard the evidence and witnessed the bear-ing of both prosecutrix and defendant on the witness stand, and approved the verdict, and we discover not the slightest reason for interfering with the verdict of the jury.

II.    No error was committed in refusing a continuance on account of the illness of Beada Ray.

It was known to defendant that she was too sick to attend court and there was no likelihood she would ever be able to do so.    There was ample time to have taken her deposition, if it was desired.

III.    Neither was there error in refusing a new trial on the ground of newly-discovered evidence.    The motion was not supported by affidavit of the supposed witness and entirely failed to meet the requirements of the law.

The judgment must be and is affirmed.    *Sherwood,* P. J., and *Burgess,* J., concur.